**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2047-17T1

CELESTE A. LAMPLEY,

     Appellant,

v.

BOARD OF REVIEW, and
NEW JERSEY DEPARTMENT
OF LABOR AND WORKFORCE
DEVELOPMENT,

     Respondent.

_____

Submitted January 29, 2019 – Decided February 21, 2019

Before Judges Hoffman and Firko.

On appeal from the Board of Review, Department of Labor, Docket No. 110,762.

Celeste A. Lampley, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Elizabeth A. Davies, Deputy Attorney General, on the brief).

PER CURIAM

Celeste A. Lampley appeals from two final agency decisions of the Board of Review (Board) affirming determinations made by the Appeal Tribunal (Tribunal). The first appeal challenges the Board's finding that her unemployment benefits must be reduced due to her pension compensation. The second appeal challenges the Board's decision that Lampley is liable to refund $8998 received as benefits. We affirm in both consolidated appeals.

I.

After Lampley's separation from her employment as an unemployment insurance clerk at the New Jersey Department of Labor (DOL), she accepted a settlement offer after the administrator of employee relations, Suzan Nickelson, allegedly told Lampley that her eligibility for unemployment benefits would be unaffected by the settlement or her receipt of pension benefits. Her last day at DOL was February 9, 2016. She was also employed on a part-time basis as a direct care provider for the Center for Family Support New Jersey, Inc. (CFS) from August 2013 to September 23, 2016.

Lampley filed for unemployment benefits on February 7, 2016. She began receiving a monthly pension of $1666.27 from DOL on March 1, 2016. From March 5 to July 30, 2016, she received weekly unemployment benefits of $541. A deputy reduced Lampley's unemployment benefits from $541 to $348, due to

a pension offset, and requested a refund of $8998 from the March to July period, due to overpayment. In a separate determination rendered that day, the deputy determined that Lampley was ineligible for benefits relative to her employment with CFS from February 26, 2016, through February 25, 2017, because she was unavailable to work.

During her telephonic testimony, Lampley testified that, on her last day of work at DOL, she was offered a "settlement" by Nickelson, and that the department would not "stop [her] unemployment or [her] pension." The Tribunal reversed the deputy's determination that Lampley was disqualified from receiving benefits in respect of her employment with CFS. As to Lampley's claim about what Nickelson told her, the Tribunal found: "It appears that claimant was misinformed. Benefit determinations are made in accordance with the law. The fact that the claimant was misinformed does not vitiate the requirements of the law." Notwithstanding its finding, the Tribunal remanded the refund issue to the deputy for a recalculation.

Lampley appealed the Tribunal's decision reducing her benefits due to the pension offset to the Board. In response, the Board remanded the issues of Lampley's pension reduction, availability for work, and her active search for work to the Tribunal for a hearing. Following another testimonial hearing, the

Tribunal determined that under N.J.A.C. 12:17-8.2, Lampley's weekly benefit rate of $541 should be reduced to $348 effective March 6, 2016, and that she was ineligible for benefits from February 7, 2016, through February 4, 2017, as per N.J.S.A. 43:21-4(c)(1). The refund amount was remanded for a recalculation. The Board affirmed the Tribunal's decision.

II.

On appeal, Lampley argues that she should not be responsible to refund the benefits paid to her because she was "misinformed," and that she could not diligently explore the matter because she suffered a stroke after her termination. The DOL seeks affirmance of the Tribunal's decision that the legal requirements of N.J.A.C. 12:17-8.2 and N.J.S.A. 43:21-16(d) vault Lampley's mistaken belief that her unemployment benefits would not be reduced.

Our authority to review a determination of the Board is limited. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). The burden of proof rests on Lampley to establish her right to unemployment compensation without a pension offset. See id. at 218.

When the issue on appeal concerns an agency's interpretation of a statute it is charged with enforcing, the "reviewing court should strive to 'give substantial deference to'" the agency's interpretation. In re Virtua-West Jersey

<u>Hosp.</u>, 194 N.J. 413, 423 (2008) (quoting <u>Saint Peter's Univ. Hosp. v. Lacy</u>, 185 N.J. 1, 15 (2005)). However, we are "not 'bound by the agency's interpretation' . . . . because it is the responsibility of a reviewing court to ensure that an agency's administrative actions do not exceed its legislatively conferred powers." <u>Id.</u> at 422 (quoting <u>Mayflower Sec. Co. v. Bureau of Sec.</u>, 64 N.J. 85, 93 (1973)).

If the Board's factual determinations are supported by sufficient credible evidence in the record, we must accept them. <u>Brady</u>, 152 N.J. at 210. We may not substitute our judgment for that of the agency, even if we would have reached a different result. <u>Ibid.</u> In addition, we will not disturb the Board's decision unless we conclude that it was arbitrary, capricious, or unreasonable. <u>Ibid.</u> Thus, our scope of review of an agency decision is restricted to the following four inquiries:

> (1) whether the agency's decision offends the State or Federal Constitution;
>
> (2) whether the agency's action violates express or implied legislative policies;
>
> (3) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion

5

that could not reasonably have been made on a showing
of the relevant factors.

[Id. at 211.]

Lampley contends that she is without fault for the incorrect benefit calculation, and that she should not be liable for an overpayment that she was not aware of nor responsible for bringing about. "N.J.S.A. 43:21-16(d) requires the full repayment of unemployment benefits received by an individual who, for any reason, regardless of good faith, was not actually entitled to those benefits." Bannan v. Bd. of Review, 299 N.J. Super. 671, 674 (App. Div. 1997) (citing Fischer v. Bd. of Review, 123 N.J. Super. 263, 266 (App. Div. 1973) (holding claimant was required to refund erroneously paid unemployment benefits even though she applied for them in good faith)). The Division is expressly authorized by statute to recover benefits erroneously paid at any time within four years after the benefits in question were paid. N.J.S.A. 43:21-16(d).

Further, N.J.A.C. 12:17-14.2 sets forth three limited circumstances under which a waiver of recovery may be granted: (1) "[w]here the claimant is deceased;" (2) "[w]here the claimant is disabled and no longer able to work;" or (3) "[w]here the recovery of the overpayment, as determined by the Director with the Controller's concurrence, would be patently contrary to the principles of equity." The Administrative Code further clarifies:

6

(d) For purposes of determining under (a)3 above whether the recovery of the overpayment would be "patently contrary to the principles of equity," the Director and Controller shall consider whether the terms of a reasonable repayment schedule would result in economic hardship to the claimant.

[N.J.A.C. 12:17-14.2.]

However, it is the exception, and not the rule, that repayment of unemployment benefits to which a recipient was not entitled will be waived. We find no exception applies here. At the hearing, Lampley testified that Nickelson advised her that she would be allowed both her pension and unemployment benefits with her settlement, which came to fruition, only at a reduced rate. Thus, there is sufficient evidence in the record supporting the Board's finding that Lampley's reliance on Nickelson was a mistake.

Recovery of erroneously distributed benefits furthers the purpose of our unemployment compensation laws. Bannan, 299 N.J. Super. at 674. Moreover, the public interest would be imperiled if the Unemployment Trust Fund were depleted by the failure to recover benefits erroneously paid to unentitled recipients, however blameless they may be. Ibid.

III.

We next address Lampley's claim that her unemployment benefits were wrongfully offset by her pension. N.J.S.A. 43:21-5a(b) deals with the situation

where an individual who qualifies for unemployment benefits is receiving a pension, taking into account contributions made by the claimant:

> If such payment is made under a plan to which the employer and individual contributed, the amount of benefits payable to the individual for any week will be reduced by an amount equal to 50 percent of the amount of the pension, retirement or retired pay, annuity, or other payment which is reasonably attributable to such week, provided that the reduced weekly benefit amount shall be computed to the next lower multiple of $1.00 if not already a multiple thereof.

> [N.J.A.C. 12:17-8.2(a)(2).][1]

Based upon our careful review of the record, we conclude that the Board appropriately applied the statutory scheme.

Lastly, we address the refund of $8998 Lampley must pay. We recognize that there may be some hardship created for beneficiaries when repayment of erroneously distributed benefits is required. As we noted in Bannan, "virtually every recipient of unemployment benefits who by definition lacks adequate sources of income and relies upon the initial representation that benefits will be paid, uses the payments to meet expenses and faces difficulty repaying sums that

---

[1] In accordance with this regulation, the Tribunal calculated that Lampley's weekly pension rate was $387.50 ($1666.27 divided by 4.3). Fifty percent of $387.50 equals $193 when rounded down. Benefits were thus appropriately calculated at $348 ($541 minus $193).

are subsequently determined to have been erroneously disbursed." Id. at 676. Where the interests of such individuals, and those of society in general, are at odds, we are loathe to apply principles of estoppel against governmental agencies. Id. at 675. That the individual must suffer hardship is a most unfortunate consequence, albeit a necessity in order to preserve the broader public interest in the unemployment compensation system. Ibid.

We acknowledge that the record tends to show that Lampley acted in good faith in applying for unemployment benefits and, indeed, there appears to have been no fault on her part leading to the overpayments. Nonetheless, Lampley has not demonstrated that a repayment schedule of the excess benefits she received would result in economic hardship to her.

The findings of the administrative agency are not disputed and such findings are binding upon this court. Simply stated, Lampley received an overpayment of benefits, which she is obligated to pay, and the pension offset was correctly calculated.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2047-17T1